601 So.2d 1366 (1992)
RPM PIZZA, INC. and National Union Insurance Company
v.
AUTOMOTIVE CASUALTY INSURANCE COMPANY.
No. 92-C-0086.
Supreme Court of Louisiana.
June 26, 1992.
Rehearing Denied September 3, 1992.
*1367 Steven John Koehler, Leefe, Gibbs & Koehler, Metairie, for applicant.
George J. Nalley, Jr., New Orleans, for respondent.
DENNIS, Justice.
The issue genuinely raised by this case is whether an automobile liability policy clause excluding coverage "while [the auto] is being used to carry [ ] property for a fee" eliminates coverage while the vehicle owner is using the car to deliver pizza as a wage-earner employed by a pizza company. We conclude that the policy exclusion clause does not preclude coverage under these circumstances and affirm the judgments of the trial and appellate courts which reached this correct result below. 590 So.2d 1349 (La.App. 5th Cir.1991). Although we granted a writ to review the decisions below that the insurance policy exclusion clause was contrary to public policy, that question is pretermitted as having been prematurely reached by the trial and appellate courts.
The parties stipulated to findings of fact as a basis for the judgment of the trial court. Thor Schmidt ("Schmidt") and Ricky Daigle ("Daigle") were employees of RPM Pizza, Inc. ("RPM"). They were hired as pizza delivery persons and required to furnish their own transportation. The stipulated findings of fact do not state precisely how the employees were paid. However, the totality of circumstances agreed to by the parties clearly indicates that a master-servant, rather than a principal-independent contractor, relationship existed between RPM and the delivery persons. Furthermore, there is no indication that a delivery charge was levied by RPM or the individual drivers upon the customer for delivery of pizza. Consequently, the most reasonable conclusion that may be derived from the stipulated facts is that the employees were compensated by wages for their hours or time employed and not by fees on a piecemeal or per delivery basis.
Schmidt and Daigle were operating their own vehicles when they were involved in separate accidents, while delivering pizza for RPM. There seems to be little dispute as to the negligence and liability of the pizza deliverers. As part of each employee's employment agreement with RPM, he was required to carry automobile liability insurance with at least the minimum statutory limits. At the time of the accident each employee maintained such a policy with Automotive Casualty Insurance Company ("Automotive Casualty").
Automotive Casualty denied coverage in both accidents arguing that commercial or business use of vehicles is not covered under the policies. The policies issued herein by Automotive Casualty are standardized personal liability policies. They provide coverage for personal liability of an insured unless otherwise prevented by law or contractual exclusion. The exclusions relative *1368 to business or commercial use in the policies at issue are:
"A. We do not provide liability coverage for any person covered under the policy ...
(5) For that person's liability arising out of the ownership or operation of a vehicle while it is being used to carry persons or property for a fee. This exclusion does not apply to a share-the-expense car pool.
(6) While employed or otherwise engaged in the business or occupation of: a) selling, b) repairing, c) servicing, d) storing, or e) parking, vehicles designed for use on many public highways. This includes road testing and delivery. This exclusion does not apply to the ownership, maintenance or use of your covered auto by: a) you, b) any family member, or c) any partner, agent or employee of you or any family member.
(7) Maintaining or using any vehicle while that person is employed or otherwise engaged in any business or occupation not described in Exclusion 6. This exclusion does not apply to the maintenance or use of: a) private passenger auto, b) pickup, panel truck or van that you own, or c) trailer used with a vehicle described in a) or b) above."
As a result of denying coverage, RPM and its at-risk excess carrier, National Union Fire Insurance Company of Pittsburgh ("National Union"), paid the sum of $14,204.49 for the physical and property damage sustained as a result of the accident involving Schmidt, and the sum of $9,413.00 for the physical and property damage sustained as a result of the accident involving Daigle. RPM and National Union now seek to recover those sums under the personal liability policies issued by Automotive Casualty to Schmidt and Daigle.
The lower courts concluded, without articulating reasons, that the policy provision excluding coverage for use in carrying persons or property for a fee would preclude coverage in the instances presented here, if it were not contrary to public policy. We disagree with this basic conclusion that the policy exclusion clause eliminates coverage for the accidents involved.
Neither the policy, nor the exclusion, prescribes the exact meaning of the term "fee" in the policy exclusion clause. Standing alone, the word "fee" is capable of being understood in two or more possible senses. For example, Webster's Ninth New Collegiate Dictionary (1988) defines the term "fee" as "a fixed charge ... a charge for a professional service." Black's Law Dictionary defines "fee" as
"A recompense for an official or professional service or a charge or emolument or compensation for a particular act or service. A fixed charge or perquisite charged as recompense for labor; reward, compensation, or wage given to a person for performance of services or something done or to be done."
Thus the meaning of "fee" may be construed narrowly to encompass only specific contracts of carriage such as when a person makes a definite payment to another to carry a specific piece of property, such as hauling trash or moving furniture, or when a passenger pays a taxi fare to carry him from one point to another. On the other hand, the meaning sometimes might contemplate that a "fee" could be compensation for labor.
Interpretation of the policy provisions in light of each other so that each is given the meaning suggested by the insurance contract as a whole reveals that the term "fee" in exclusion A(5) refers to a fixed charge rather than to wages or compensation generally. La.C.C. art. 2050; Central Louisiana Electric Company, Inc. v. Westinghouse Electric Corp., 579 So.2d 981, 985 (La.1991). The exception to exclusion A(7) insures that coverage is extended to vehicles owned by the insured, regardless of their use in commercial or business situations. See generally W. McKenzie & H. Johnson, Insurance Law and Practice, 15 La. Civil Law Treatise § 81, at 206-208 (1986 & Supp.1991). Under this provision a travelling salesperson, a floating employee, or any other employee required to use his own vehicle in the course of his employ would be covered under exclusion A(7) of *1369 the policy. Therefore, to interpret "fee" in exclusion A(5) so broadly as to include any compensation paid to the owner of the vehicle by his employer would impermissibly destroy coverage for all such uses of the vehicle in direct conflict with the saving provision of exclusion A(7). See La.C.C. art. 2046. The exclusion from coverage for certain vehicle uses contemplated by exclusion A(5) is properly characterized as prohibiting coverage for activities similar to those involving livery conveyances or common carriers, i.e., contracts for carriage or hire where a per trip or per excursion charge is paid for the carriage of property or persons. Compare McKenzie & Johnson, supra, § 76, at 191-193. Therefore, we conclude that exclusion A(5) is not implicated merely by the paying of any form of compensation, such as wages. La.C.C. art. 2049; Garcia v. St. Bernard Parish School Board, 576 So.2d 975, 976 (La.1991); Carney v. American Fire & Indemnity Co., 371 So.2d 815 (La.1979); W. McKenzie & H. Johnson, Insurance Law and Practice, 15 La. Civil Law Treatise § 4, at 7 (1986 & Supp.1991).
Alternatively, even if the exclusion is deemed ambiguous, insurance policies must be liberally construed in favor of coverage, and provisions susceptible of different meanings must be interpreted with a meaning that renders coverage effective and not with one that renders it ineffective. La.C.C. art. 2049; Capital Bank & Trust Co. v. The Equitable Life Assurance Society, 542 So.2d 494, 496 (La.1989). See also Breland v. Schilling, 550 So.2d 609, 610 (La.1989). Consequently, even if our interpretation is not the only reasonable view of the exclusion proviso, any ambiguity must be construed against the insurance company and in favor of the reasonable construction that affords coverage.
Further, our interpretation is in accord with that of the majority of other jurisdictions which have considered this exclusion. In United Services Automobile Association v. Couch, 643 S.W.2d 668 (Tenn.App. 1982), the Court of Appeals of Tennessee found that the exclusion ("a vehicle while it is being used to carry persons or property for a fee") is not applicable to use by an hourly wage earning pizza delivery driver. In Couch, a delivery charge was added to the cost of the pizza when an order was placed. The court of appeal found, however, that this was not germane to the issue of exclusion under the policy because any charge for delivery inured only to the benefit of the employer and not to the insured. Thus, the court found that the delivery driver was not being paid a "fee", merely wages. This rationale of course extends with equal force to this case where the record suggests that delivery of the pizza was without extra charge to the customer, and thus there was no delivery fee which could inure to the benefit of the driver.
Similarly, the Arkansas Court of Appeal in Pizza Hut of America, Inc. v. West General Insurance Co., 36 Ark.App. 16, 816 S.W.2d 638 (1991), found that the exclusion was ambiguous when applied to a pizza delivery person. The court of appeal vacated a determination by the trial court that the policy exclusion was clear and unambiguous and remanded the matter for a new trial. But see Dhillon v. General Accident Insurance Co., 789 S.W.2d 293 (Tex.App.Houston [14th Dist] 1990) (assuming without discussion that delivery of pizza is carrying property for a fee); Krauss v. Derocili, Civil No. 86C-NO-60, 1988 WL 90532 1988 Del.Super. Lexis 276 (Del.Super. August 2, 1988) (exception is clear and excludes coverage for pizza delivery).
In First Georgia Insurance Co. v. Goodrum, 187 Ga.App. 314, 370 S.E.2d 162 (1988), the Court of Appeals of Georgia held that the insured's use of her vehicle for an hourly wage to transport two of her co-employees from their home to their jobs and back did not constitute use of the vehicle for carrying people or property for a fee. In particular the Georgia court found that "[i]n the case at hand it is ambiguous whether the exclusion for carriage of persons `for a fee' covers only the situation where passengers pay an amount for their own transport or whether the exclusion also covers the situation where ... an employee is being paid by his employer to *1370 carry other employees and receives only an hourly rate plus mileage reimbursement." Finding the policy language to be ambiguous, the court of appeal construed the policy language in favor of coverage.
In Nationwide Insurance Co. v. Thorley, Civil No. 14,658, 1991 WL 6137 1991 Ohio App. Lexis 210 (Ohio.App. January 16, 1991), the Ohio Court of Appeal found that the exclusion was ambiguous. It recognized that the insurers' reading of the exclusion to prohibit coverage whenever any fee or payment to the insured is involved was reasonable. However, it also noted that the exclusion could also be reasonably interpreted to exclude from coverage only the use of a vehicle to carry property for a fee; the distinction being only if the vehicle was used for the specific purpose of obtaining a fee, as opposed to ordinary wages, for carrying goods. In Thorley, the court of appeal specifically found that there was no evidence in the record that a fee, other than ordinary wages, was paid to Thorley. Accord Johnson v. Allstate Insurance Co., 505 So.2d 362 (Ala.1987) (van used to transport children from home to school for $1 per day constituted use of vehicle for a fee); Kurz v. Balboa Insurance Co., Civil No. 88-6246, 1990 WL 20219 1990 U.S. Dist. Lexis 2301 (E.D.Penn. March 1, 1990) (a taxi cab is clearly contemplated as coming within exclusion of vehicles used to carry persons or property for a fee).
Other courts have found coverage by determining that the provision was void for public policy reasons while assuming coverage would be prohibited. See, e.g., Atlanta Casualty Company v. Salyer, No. 17,251, 1991 WL 216277, 1991 Mo.App. Lexis 1610 (Mo.App. October 25, 1991); Nationwide Mutual Ins. Co. v. Swisher, 731 F.Supp. 691 (E.D.Penn.1989) (exclusion of carrying property for a fee is void as in conflict with the public policy behind the Pennsylvania Uninsured Motorist Act). But see Kurz v. Balboa Insurance Co., Civil No. 88-6246, 1990 WL 20219 1990 U.S. Dist. Lexis 2301 (E.D.Penn. March 1, 1990) (exclusion does not violate public policy of Pennsylvania Financial Responsibility Law). Because any decision on the issue of whether the exclusion would violate public policy would be merely advisory at this point, we express no opinion as to whether or not the exclusion asserted herein in a case appropriate for its application would violate the public policy of this State. St. Charles Parish School Board v. GAF Corporation, 512 So.2d 1165, 1171 (La.1987) (on rehearing). We leave that question for another day.
Finally, Automotive Casualty argues that we should not review the lower court's interpretation of the contract exclusion because the argument now asserted was not expressly passed on by the trial and appellate courts. It is well established that a party who is satisfied with a judgment, even if he does not file a notice of appeal or an application for review, may present in support of the judgment in his favor any argument supported by the record, whether it was overlooked or flatly rejected by the court below. La.C.C.P. art. 2133(B). Roger v. Estate of Moulton, 513 So.2d 1126, 1136 (La.1987) (on rehearing); Caldwell v. Second Judicial District Indigent Defender Board, 475 So.2d 96, 100 (La. App. 2d Cir.1985). See also United States v. American Railway Express Co., 265 U.S. 425, 44 S.Ct. 560, 68 L.Ed. 1087 (1924).

CONCLUSION
For the reasons assigned, we affirm the judgments of the trial and appellate courts because we conclude that the policy exclusion clause does not preclude coverage under the circumstances of the present case. We pretermit as having been prematurely reached by the trial and appellate courts the question of whether the insurance policy exclusion clause is in derogation of laws enacted for the protection of the public interest.
AFFIRMED.
WATSON, J., concurs in the result and assigns reasons.
COLE, J., dissents and will assign reasons.
*1371 WATSON, Justice, concurring.
The majority errs in pretermitting the real issue in this case. A writ was granted to decide if an insurance policy provision excluding automobile liability coverage when persons or property are carried for a fee violates the public policy of Louisiana's Motor Vehicle Safety Responsibility Law. LSA-R.S. 32:851-1043.
LSA-R.S. 32:861 and 32:900 require that every motor vehicle registered in Louisiana have a minimum amount of automobile liability insurance or an equivalent. There are some exceptions, not pertinent here. See LSA-R.S. 32:1041.
LSA-R.S. 32:900(F)(1) provides:
The liability of the insurance carrier with respect to the insurance required by this Chapter shall become absolute whenever injury or damage covered by said motor vehicle liability policy occurs; said policy may not be cancelled or annulled as to such liability by an agreement between the insurance carrier and the insured after the occurrence of the injury or damage; no statement made by the insured or on his behalf and no violation of said policy shall defeat or void said policy;
....
LSA-R.S. 32:900(G) states:
Any policy which grants the coverage required for a motor vehicle liability policy may also grant any lawful coverage in excess of or in addition to the coverage specified for a motor vehicle liability policy and such excess or additional coverage shall not be subject to the provisions of this Chapter. With respect to a policy which grants such excess or additional coverage the term "motor vehicle liability policy" shall apply only to that part of the coverage which is required by this Section.
Financial responsibility laws are a legislative response to the problem of assuring compensation to traffic accident victims. 12A M. Rhodes, Couch on Insurance 2d, § 45:721 (1981). They are designed to protect innocent members of the public injured by the negligent operation of automobiles. Id. at § 45:723.
Morris v. American Sur. & Fidelity Ins., 573 So.2d 1227 (La.App. 4th Cir.1991), also involved a pizza delivery driver for RPM Pizza, Inc. Morris held that a policy exclusion for business use did not conflict with Louisiana's compulsory insurance law but recognized a conflict with Stanfel v. Shelton, 563 So.2d 410 (La.App. 1st Cir. 1990). Stanfel decided that a minor's permissive operation of his mother's vehicle to deliver pizza was covered by her liability insurance policy because the statutory mandate of compulsory insurance for permissive drivers prevailed over a policy exclusion for business use.
With the exception of Morris, Louisiana courts have consistently held that an automobile business use exclusion is contrary to the public policy of Louisiana's compulsory liability law. See Rudison v. Richard, 526 So.2d 369 (La.App. 4th Cir.1988); Louisiana Farm Bur. Cas. Ins. v. Darjean, 554 So.2d 1376 (La.App. 1st Cir.1989), writ denied, 558 So.2d 571 (1990); and Arnaud v. Commercial Union Ins. Co., 594 So.2d 992 (La.App. 3d Cir.1992). The Morris decision conflicts with the purpose of the Motor Vehicle Safety Responsibility Law and is contrary to the prevailing rule in the United States.
Louisiana's omnibus provision supersedes a conflicting insurance policy exclusion of a named driver. Fields v. Western Preferred Cas. Co., 437 So.2d 344 (La. App.2d Cir.), writs denied, 440 So.2d 528, 754 (1983). Louisiana's public policy prohibits a permissive use exclusion of fellow employees. Akers v. Avis Rent-A-Car, 587 So.2d 831 (La.App.4th Cir.1991), writ denied, 592 So.2d 1299 (1992). Any exclusions contrary to the statutory policy are void. Thomas v. Petrolane Gas Service Ltd., 588 So.2d 711 (La.App.2d Cir.1991), writ denied, 590 So.2d 1201 (1992).
Policy provisions which conflict with financial responsibility laws have also been uniformly nullified in other states. The minimum coverage required by South Carolina's financial responsibility statute cannot be limited by an automobile business exclusion. Farmland Mut. Ins. Co. v. Jim Moore Cadillac, 283 S.C. 33, 320 S.E.2d *1372 719 (App.1984); American Mut. Fire Ins. Co. v. Aetna, 303 S.C. 301, 400 S.E.2d 147 (1991). Excluding coverage for vehicles used in business or commerce also contravenes South Carolina's financial responsibility law. Pennsylvania Nat. Mut. Cas. Ins. Co. v. Parker, 282 S.C. 546, 320 S.E.2d 458 (App.1984). A coverage exclusion for hired vehicles is invalid in Florida. Lewis v. Allstate Ins. Co., 425 So.2d 100 (Fla. 1st DCA 1982). An "escape clause" which excludes coverage for persons with other insurance is void, being contrary to the public policy of Michigan's financial responsibility act. Tahash v. Flint Dodge Co., 115 Mich.App. 471, 321 N.W.2d 698 (1982). A clause which violates the public policy of Michigan's financial responsibility act by excluding an entire class, such as those under 21, is unenforceable. League Gen. Ins. v. Budget Rent-A-Car, 172 Mich.App. 802, 432 N.W.2d 751 (1988). An exclusion for injury sustained loading or unloading a vehicle violates Pennsylvania's financial responsibility law. Omodio v. Aetna Life and Cas., 384 Pa.Super. 544, 559 A.2d 570 (1989). Exclusion of vehicle maintenance activities also violates Pennsylvania's financial responsibility law. Rimpa v. Erie Ins. Exchange, 404 Pa.Super. 287, 590 A.2d 784 (1991). A coverage exclusion while an insured is trying to avoid arrest is against Georgia public policy and unenforceable. Cotton States Mut. Ins. Co. v. Neese, 254 Ga. 335, 329 S.E.2d 136 (1985).
Since compulsory automobile insurance protects victims, not tortious drivers, an exclusion for a driver's intentional acts cannot prevent a victim's recovery under Hawaii law. State Farm Fire & Cas. Co. v. Tringali, 686 F.2d 821 (9th Cir.1982). In Georgia, after an accident, a compulsory policy cannot be voided because of misrepresentations in the insurance application. Pearce v. Southern Guaranty Ins. Co., 246 Ga. 33, 268 S.E.2d 623 (1980); Sentry Indem. Co. v. Sharif, 248 Ga. 395, 282 S.E.2d 907 (1981).
Under a "household clause," a wife's recovery against her husband's insurer can be limited to the amount required by Maryland's financial responsibility law. Walther v. Allstate Ins. Co., 83 Md.App. 405, 575 A.2d 339, cert. denied, 320 Md. 801, 580 A.2d 219 (1990).
LSA-R.S. 32:861 and 32:900 mandate minimum liability insurance coverage on all motor vehicles registered in the state. That coverage cannot be defeated or voided by a violation of the policy. LSA-R.S. 32:900(F)(1). A policy exclusion when persons or property are carried for a fee violates Louisiana's Motor Vehicle Safety Responsibility Law, as to the required minimum liability coverage.
Some other states have distinguished pizza delivery cases where drivers worked for fees and for wages. Although the record is not specific, these drivers probably worked for fees. If this fact is to be decisive, counsel is correct that remand should be ordered. By avoiding the conflict between Morris and the other Louisiana cases, the majority gives no guidance to the lower courts and fails to execute the proper role of this court. The majority should decide the conflict between Morris and the other Louisiana cases.
I respectfully concur in the result reached by the majority.
COLE, Justice, dissenting.
The majority concludes that the policy exclusion clause does not preclude coverage under the circumstances of this case. Because I believe the exclusion is clear and free of ambiguity, I dissent from the majority's conclusion. Furthermore, I would reach the question of whether a business use exclusion violates the public policy of this state and would conclude such exclusions do not violate any expressed legislative policy. I would therefore reverse the judgment of the court of appeal and render judgment in favor of defendant Automotive Casualty Insurance Company.

I.
As the majority indicates, the applicable exclusion in the policies at issue provides that defendant does "not provide liability coverage for any person covered under the policy ... (5) [f]or that person's liability arising out of the ownership or operation of *1373 a vehicle while it is being used to carry persons or property for a fee." Insurance companies have the right to limit coverage if the restrictions are clear and are not in conflict with constitutional, statutory, or public policy provisions. Pareti v. Sentry Indem. Co., 536 So.2d 417, 421 (La.1988); Oceanonics, Inc. v. Petroleum Distributing Co., 292 So.2d 190, 192 (La.1974).
Both the trial court and the court of appeal assumed the exclusion, if not void for public policy reasons, would effectively preclude coverage. They were correct. The majority goes out of its way to ascribe a multitude of meanings to the word "fee" with the result that the language of the exclusion is rendered imprecise. "Courts have no authority to alter the terms of policies under the guise of contractual interpretation when the policy provisions are couched in unambiguous language." Pareti, supra, at 420. I believe the exclusion stands fairly by itself and indicates that defendant had no intention of underwriting coverage for the type of conduct involved in this case, i.e., the rapid-paced, continuous, home delivery of pizzas to customers for remuneration. This activity stands in contradistinction to the gratuitous act of, for example, one who agrees to travel to a pizza parlor, purchase a pizza for a neighbor, deliver it to that neighbor, and collect the cost of the pizza from the neighbor on delivery.
To say the activity in this case is not the carrying of property for a fee is to ignore economic reality. Even if a specified delivery charge is not added separately, on the invoice, to the price of the delivered pizza, and ignoring the question whether gratuities paid to the delivery drivers might constitute a separate fee, it defies logic and common business practice to assume plaintiff RPM has not factored the cost of the delivery into its per unit price for the pizza.[1]
Although I believe the exclusion is clear and unambiguous standing alone, it becomes clearer still when the testimony of defendant's underwriting supervisor is consulted.[2] He indicated defendant does not write business automobile liability policies, has neither sought nor received authority from the state Insurance Commissioner to write such a policy, and, had the insured answered truthfully the question on the insurance application as to whether he would be using the car for business, defendant would have declined to issue the policy. Under the circumstances of this case, the clear exclusionary clause operates to preclude coverage.

II.
The majority pretermits consideration of whether business use exclusions are in violation of the public policy of this state because it held the exclusion did not preclude coverage. Because I believe the exclusion is effective, I would resolve the public policy issue.
I note, initially, that the courts of this state have long recognized the so-called "business use" exclusions of liability policies. E.g., Redden v. Liberty Mutual Insurance Company, 327 So.2d 474 (La.App. 2d Cir.), writ denied, 331 So.2d 495 (La. 1976); Lee v. Allstate Insurance Company, 274 So.2d 433 (La.App. 1st Cir.1973). Rather than being a means of escaping the liability for which the insurer has legitimately contracted, a business use exclusion is merely a recognition of the differences in the types of risks to which the insurer is willing to be exposed. Just as insurers are free to calculate premiums based upon risk factors, which, in other contexts, might constitute offensive or even unlawful classifications,[3] discriminating among various types of uses of the insured vehicle, e.g., business or pleasure, is simply the means by which the insured pays his fair share for the risk he contractually shifts to his insurer. Cf. Legendre v. Hill, 262 La. 249, 257-58, 258 n. 4, 263 So.2d 25, 27-28, 28 n. 4 (1972) (recognition *1374 that tort claim exposure increases, with corresponding increase in premium charge, for persons using vehicle regularly in business versus those who may only occasionally, or never, operate a vehicle in the course of business).
The legislature has expressed the policy of the state that each vehicle registered shall be insured to at least certain minimum levels of liability coverage. See LA. REV.STAT. § 32:900(B). This pronouncement cannot reasonably be taken to suggest insurers are not permitted to differentiate among the better and the poorer risks in calculating premiums, in accepting or rejecting individuals outright, or in assessing different premiums for different classes of use.
"The liability of the insurance carrier with respect to the insurance required by this Chapter shall become absolute whenever injury or damage covered by said motor vehicle liability policy occurs...." LA.REV. STAT. § 32:900(F)(1). The "insurance required by this Chapter" is more specifically defined in § 32:900(B), (C), (D), and (E). Nowhere in the statute is an insurer prohibited from setting forth in the required insurance policy the types of risk it has contractually agreed to assume.
Extending the trial court and court of appeal opinions to their logical ends, each automobile liability policy would become a non-differentiated "all risks" policy. An insurer would then be required to spread the cost of "all risks" to every policy holder in the state irrespective of the individualized use of the vehicle. I discern no legislative intent compelling such a result. I would hold, as did the court in Morris v. American Sur. & Fidel. Ins. Co., 573 So.2d 1227, 1230 (La.App. 4th Cir.1991), that where a policy excludes a specified risk rather than excluding omnibus permissive users, there is no conflict with the compulsory insurance laws of this state.
Because the court fails to give effect to the policy exclusion and fails to resolve the public policy issue, I dissent.
NOTES
[1] It may well be that customers who choose to visit an RPM shop and pick up their own pizzas ultimately subsidize those who have them home delivered, but that is not relevant to the outcome of this case.
[2] The fact of this testimony was stipulated to by the parties in the trial court.
[3] Categories such as age, gender, and marital status, come readily to mind, as does an insured's place of residence.